# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT
## 14-51079

In the Matter of: DELTA PRODUCE, L.P.; STACI PROPERTIES, LIMITED,

                    Debtors
_____

KINGDOM FRESH PRODUCE, INCORPORATED; I KUNIK COMPANY, INCORPORATED; FIVE BROTHERS JALISCO PRODUCE COMPANY, INCORPORATED, doing business as Bonanza 2001; RIO BRAVO PRODUCE, LIMITED, L.L.C.; G.R. PRODUCE, INC.,

                    Appellees Cross-Appellants

v.

STOKES LAW OFFICE, L.L.P.,

                    Appellant Cross-Appellee
_____

### Consolidated with
### 14-51080

In the Matter of: DELTA PRODUCE, L.P.; SUPERIOR TOMATO-AVOCADO, LIMITED; ATLED, LIMITED; STACI PROPERTIES, LIMITED,

                    Debtors
_____

KINGDOM FRESH PRODUCE, INCORPORATED; I KUNIK COMPANY, INCORPORATED; FIVE BOTHERS JALISCO PRODUCE COMPANY, INCORPORATED, doing business as Bonanza 2001; RIO BRAVO PRODUCE, LIMITED, L.L.C.; G.R. PRODUCE, INC.,

                    Appellees

v.

STOKES LAW OFFICE, L.L.P.

                    Appellant
_____

# PRINCIPAL BRIEF AND BRIEF IN RESPONSE
# OF APPELLEES/CROSS APPELLANTS
_____

Michael J. Keaton, Esq.
Scott E. Hillison, Esq.
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015
Tel:    847/934-6500
Email: keaton@pacatrust.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certified that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

STOKES LAW OFFICE, LLP (Appellant/Cross Appellee) represented by
Mark C.H. Mandell, Esq.
42 Herman Thau Road
Annandale, New Jersey 08801

KINGDOM FRESH PRODUCE, INC. *et al* (Appellee/Cross-Appellants)
represented by
Michael J. Keaton, Esq.
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015

DELTA PRODUCE, LP *et al* ("Debtors")represented by
Alan M. DeBard, Esq.
LANGLEY & BANACK, INC.
745 East Mulberry - Suite 900
San Antonio, Texas 78212

Craig A. Stokes, Esq.
STOKES LAW OFFICE, LLP
3330 Oakwell Court, Suite 225
San Antonio, Texas 78218

RANDOLPH N. OSHEROW, Chapter 7 Trustee represented by
Thomas William McKenzie, Esq.
LAW OFFICES OF THOMAS McKENZIE
1107 McAllister Frwy
San Antonio, Texas 78216

i

Walter Scott Jensen, individually, represented by
Elliot S. Cappuccio
PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES LLP
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213

Various PACA Creditors of the Debtors, represented by

Bruce W. Akerly, Esq.
CANTEY HANGER LLP
1999 Bryan Street, Suite 3300
Dallas, Texas 75201

Zachary Burke Aoki, Esq.
THURMAN & PHILLIPS, P.C.
8000 IH 10 West, Suite 1000
San Antonio, Texas 78230

Paul D. Barkhurst, Esq.
BARKHURST & HINOJOSA, P.C.
110 Broadway, Suite 350
San Antonio, Texas 78205

John Kurt Stephen
CARDENA, WHITIS, STEPHEN et al.
100 South Bicentennial
McAllen, Texas 78501

Michael J. Black, Esq.
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209-5500

Steven E. Nurenberg, Esq.
MEUERS LAW FIRM, P.L.
5395 Park Central Court
Naples, Florida 34109

Bart M. Botta, Esq.
RYNN & JANOWSKY, LLP
4100 Newport Place Drive, Suite 700
Newport Beach, California 92660

Diana M. Geis
CURL & STAHL PC
700 N. St. Mary's Street, Suite 1800
San Antonio, Texas 78205

Blake Alan Surbey, Esq.
McCARRON & DIESS
4530 Wisconsin Ave, NW, Suite 301
Washington, DC 20016

Paul Thomas Curl
CURL & STAHL, P.C.
700 North St. Mary's Street, Suite 1930
San Antonio, Texas 78205

Robert E. Goldman, Esq.
LAW OFFICE OF ROBERT E. GOLDMAN
1 East Broward Blvd, Suite 700
Fort Lauderdale, Florida 33301


Date: February 9, 2015                    Respectfully submitted,


                                          /s/ Michael J. Keaton, Esq.
                                          Attorney of Record for
                                          Appellee/Cross-Appellant
                                          Kingdom Fresh Group

## STATEMENT REGARDING ORAL ARGUMENT

The law is clear.  Other than all the denials of being Debtor's § 327(e) Counsel, the facts are also clear.  Accordingly, the Kingdom Fresh Group does not feel oral argument is necessary to affirm the District Court's well-reasoned twenty-seven (27) page opinion on Fee Orders #1 and #2, the thirty-nine (39) page opinion denying the motion for reconsideration from Debtor's Counsel and the forty-six (46) page opinion denying Fee Order #3.   In all, one hundred twelve (112) pages of explanation concluding with the following crystal clear message for this Debtor's Counsel:

> PACA does <u>not</u> authorize the payment of Special Counsel's - or a trustee's - fees out of PACA trust funds prior to the satisfaction of the PACA beneficiaries' claims.  Therefore, Kingdom Fresh's concern is allayed by PACA's <u>mandate</u> that all PACA beneficiaries are entitled to "full payment" <u>before payment can be made to **_any other creditor_**</u>, and here it is <u>undisputed</u> that the PACA beneficiaries would not have received full payment if Special Counsel's fees were paid.

ROA.14-51079.1421(emphasis added).   However, if this Honorable Court feels oral argument is necessary, the Kingdom Fresh Group will gladly attend to address any remaining questions.

# TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Contents . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Statement of the Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Concise Statement of the Case . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PACA and the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.      THE DISTRICT COURT ERRED WHEN IT FAILED TO CONSIDER
        WHETHER DEBTORS' COUNSEL'S ACTS OF  SIMULTANEOUSLY
        REPRESENTING THE DEBTORS AND THE PACA CREDITORS
        CREATED AN ACTUAL CONFLICT OF INTEREST SUFFICIENT
        TO DENY ALL COMPENSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

        A)      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B)      Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

II.     THE DISTRICT COURT HAD PROPER SUBJECT MATTER
        JURISDICTION OVER ALL THREE (3) FEE ORDERS  . . . . . . . . . . . . .  30

        A)      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

        B)      Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

III.    DEBTORS' COUNSEL FAILED TO MEET HIS "CLEARLY
        ERRONEOUS" STANDARD REGARDING THE DISTRICT
        COURT'S REJECTION OF ITS "IMPLIED CONSENT"
        AND JUDICIAL ESTOPPEL ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . .  36

        A)    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        B)    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

IV.    DEBTORS' COUNSEL FAILED TO SHOW THE DISTRICT
        COURT'S  APPLICATION OF THE *ALANCO* HOLDING WAS
        CLEARLY ERRONEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

        A)    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

        B)    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

V.    DEBTORS' COUNSEL FAILED TO SHOW HOW THE DISTRICT
        COURT'S DECISION TO VACATE ALL THREE (3) FEE AWARDS
        WAS CLEARLY ERRONEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

        A) Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

        B) Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# TABLE OF AUTHORITIES

CASES:

Ahrens v. Perot Systems, 205 F. 3d 831 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 37

American Int'l Trading. v. Petroleos Mexicanos, 835 F. 2d 536 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,38,42

Associated Int'l Ins. v Blythe, 283 F. 3d 780 (5th Cir. 2002) . . . . . . . . . . . . . . . . . 21

Bartee v. Tara Colonoy Homeowners Assoc. (In re Bartee), 212 F. 3d 277
(5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33,34

Bass c. Denney(In re Bass), 171 F. 3d 1016 (5th Cir. 1999) . . . . . . . . . . . . . . . . . 30

Borrego Springs Bank v. Skuna River Lumber, 564 F. 3d 535 (5th Cir. 2009) . 18,19

C.H. Robinson v. Alanco, 239 F. 3d 483 (2nd Cir. 2010) . . . . . . . . . . . 2,11,38,39,40

Endico Potatoes v. CIT Group/Factoring, 67 F.3d 1063 (2nd Cir. 1995) . . . . . . . . . .14

Fowler v. Incor, 279 Fed. Appx. 590,593 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . .20

Georgia Pacific v. Sigma Service, 712 F. 2d 962,968 (5th Cir. 1983). . . . . . . . . . 13,16

Hall v. GE Plastic Pacific PTE, 327 F. 3d 391 (5th Cir. 2003) . . . . . . . . . . . . . . . . 37

Hiller Cranberry Products v. Koplovsky, 165 F. 3d 1 (1st Cir. 1999) . . . . . . . . . . . 15

In re Diamond Mortgage Corp, 135 B.R. 78 (Bankr. N.D. IL 1991) . . . . . . . . . .22,23

In re Edwards, 962 F. 2d 641 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

In re England, 975 F. 2d 1168 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

In re Fresh Approach, 51 B.R. 412 (Bankr. N.D. TX 1985) . . . . . . . . . . . . . . . .16,17

In re Georgetown of Kettering, 750 F. 2d 536 (6th Cir. 1984) . . . . . . . . . . . . . . . . .21

In re Kedavis Industries, 91 B.R. 742 (N.D. TX 1988) . . . . . . . . . . . . . . . . . . .21,27

In re Kennedy & Cohen, 612 F. 2d 963,965 (5th Cir. 1980) . . . . . . . . . . . . . . . . 17

In re Kornblum, 81 F. 3d 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Land, 116 Barnk. 798 (D. Col 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

In re Michigan General Corp., 77 B.R. 97 (Bankr. N.D. Tex. 1987) . . . . . . . . . . . 22

 In re Roberts, 46 Bankr. 815 (Bankr. Utah 1985) . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Transtexas Gas Corp v TransTexas Gas, 303 F. 3d 571, 580 (5th Cir. 2002) . . .33

In re West Delta Oil Company, 432 F. 3d 347, 354 (5th Cir. 2005) . . . . . . . . . . . .22

In re Wilde Horse Enterprises, 136 B.R. 830 (C.D. Ca 1991) . . . . . . . . . . . . . . . . 22

IRS v. Orr (In re Orr), 180 F. 3d 656 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 33

Kamen v. Kemper Fin. Services, 500 U.S. 90, 99 (1991) . . . . . . . . . . . . . . . . . . . .32

La. World Exposition v. Fed Insurance (In re La World Exposition),
        832 F. 2d 1391 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Matter of Quality Holstein Leasing, 752 F. 2d 1009 (5th Cir. 1985) . . . . . . . . . 14,16

Morris Okun v. Harry Zimmerman, 814 F. Supp. 346 (S.D.N.Y. 1993) . . . . . . . . . 15

Pupitone v. Biomatrix, 288 F. 3d 239, 250 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . 20

State of New Hampshire v. State of Maine, 532 U.S. 750 (2001) . . . . . . . . . . . . . 37

Tanimura & Antle v. Packed Fresh Produce, 222 F. 3d 132 (3rd Cir. 2000) . . . . 14,15

Wolf v. Weinstein, 372 U.S. 633 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Woods v. City National Bank & Trust Co</u>, 312 U.S. 262 (1941) . . . . . . . . . . . . . .   21

<u>United States v. Whiting Pools</u>, 462 U.S. 198 (1983) . . . . . . . . . . . . . . . . . . . . . . . . .15

<u>United States v. C.I.T. Constr</u>, 944 F. 2d 253 (5th Cir. 1991) . . . . . . . . . . . . . . . . .  37

<u>STATUTES</u>:

7 U.S.C. § 499e(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

11 U.S.C. § 327(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21,23,24,26,27,28,30,40,41

11 U.S.C. § 328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

11 U.S.C. § 329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

11 U.S.C. § 506(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

11 U.S.C. § 541(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14,25

28 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,11,33

<u>OTHER AUTHORITIES</u>:

49 C.F.R. §45735 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Bank. P. 2016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

Fed. R. Bank. P. 8003(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Fed. R. Bank. P. 9031 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

Pub. L. 98-273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT
     R. 1.06(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

## JURISDICTIONAL STATEMENT

Appellees/Cross-Appellants Kingdom Fresh Produce, Inc., I. Kunik Company, Inc., Five Brothers Jalisco Produce Company, Inc. d/b/a Bonanza 2001, Rio Bravo Produce, Ltd. and G.R. Produce, Inc. (hereinafter "Kingdom Fresh Group") are not satisfied with the "Statement of Subject Matter Jurisdiction" of Appellant/Cross-Appellee Stokes Law Office, L.L.P. (hereinafter "Debtors' Counsel"). All three (3) of the bankruptcy court's orders granting Debtors' Counsel the right to draw his fees from trust funds his client did not even own were "final" orders which invoked the jurisdiction of the District Court pursuant to 28 U.S.C. § 158(a)(1). 28 U.S.C. § 158(a)(2) is not applicable. The express statutory trust at issue is found at § 499e(c) in the Perishable Agricultural Commodities Act, 19030, 7 U.S.C. §§ 499a-t (2012 & Supp. 2014) (the "PACA") of debtors Delta Produce, L.P. and Superior Avocado-Tomato Ltd. (hereinafter the "Debtors"). Kingdom Fresh Group is satisfied with "Statement of Appellate Jurisdiction in the U.S. Court of Appeals" from Debtors' Counsel.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court had proper subject matter jurisdiction over the three (3) orders granting the requests of Debtors' Counsel to have his fees paid out of the non-estate PACA trust funds his client was holding?

2.  Whether the District Court properly rejected Debtors' Counsel's judicial estoppel and "implied consent" arguments?

3.  Whether the District Court properly found the holding of <u>C.H. Robinson Co v. Alanco Corp</u>, 239 F. 3d 483 (2nd Cir. 2001) applicable to the facts of this case?

4.  Whether the District Court's act of vacating of all three (3) Fee Orders is consistent with PACA statute, the Bankruptcy Code, the Bankruptcy Rules and the Texas Rules of Professional Conduct?

5.  Whether Debtors' Counsel could simultaneously represent the Debtors and PACA creditors at a mediation between the Debtors, PACA creditors, International Bank of Commerce (hereinafter "IBC Bank") and the Walter Scott Jensen, principal of the Debtors (hereinafter "Principal") (Debtors' Counsel's former client in this case) without creating an actual conflict of interest sufficient to deny any and compensation from any source?

2

## CONCISE STATEMENT OF THE CASE

The Debtors were companies formerly engaged in the purchase or sale of produce in wholesale quantities and thus qualified as "dealers" as defined in the PACA.  At the end of 2011, the Debtors fell on hard times and began defaulting on their obligations to their respective PACA trust creditors.  Eventually, PACA creditors filed three (3) separate actions against the Debtors in the U.S. District Court for the Western District of Texas (collectively the "District Court Cases").  Debtors' Counsel *__filed an appearance__* on behalf of the Debtors and the Principal in all three (3) District Court cases.

On January 3, 2012, the Debtors both filed separate, voluntary Chapter 11 bankruptcy petitions in the U.S. Bankruptcy Court for the Western District of Texas, case numbers 12-b-50073 and 12-b-50074.  Shortly thereafter, the Bankruptcy Court consolidated the Debtors' bankruptcies under case number 12-b-50073. Debtors' Counsel filed an appearance on behalf of the Debtors in these bankruptcy cases on January 3, 2012.  ROA 14-51079.226-227.   On January 13, 2012, Superior Avocado-Tomato filed a motion to employ Debtors' Counsel as its § 327(e) PACA litigation counsel in case number 12-50074.

In support of this motion, Debtors' Counsel signed an affidavit, in which he averred as follows in order to induce the Bankruptcy Court to approve his hiring:

3

> **Except for continuing representation** *of the Debtor*, neither I nor the Firm has represented or **will represent any other entity in connection with these cases, and neither I nor my Firm will accept** *any fee from any other party or parties* **in these cases**, except as before mentioned.

ROA.14-51079.280-283 ¶8 (emphasis added). Shortly thereafter, debtor Delta Produce LP filed an identical motion and attached the same affidavit. ROA.14-51079.277-279. On March 27, 2012, the Bankruptcy Court signed an order approving the Debtors' motions to employ the Debtors' Counsel as § 327(e) counsel for the estates. ROA.14-51079.305-306.

On January 19, 2012, the Debtors filed a motion to establish the procedures for approving which PACA claims were valid and which were not (the "PACA Procedures Motion"). ROA.14-51079. 229-254. The PACA Procedures Motion merely requested " the appointment of Special Counsel to collect and liquidate the PACA trust assets". 14-51059.231. ¶9(a). Nowhere in that Motion did the Debtors request authority to dip into PACA trust assets clearly outside the scope of "property of the estate" under § 541(d), funds the Debtors admittedly did not own, to pay the fees of their Debtors' Counsel or any other hired professional. Id.

The Debtors also filed a "Motion to Shorten Notice" requesting the PACA Procedures Motion be heard a mere five (5) days after Debtors filed it. On January 25, 2012, the Bankruptcy Court signed a proposed order which Debtor's Counsel submitted to chambers that went well beyond the relief requested in the motion. This

4

"Order Establishing a Deadline to File PACA Trust Claims, For Procedures to Resolve Those Claims, and For Appointment of Special PACA Counsel" (hereinafter the "PACA Procedures Order") appointed Debtors' Counsel as "Special PACA Counsel for the Debtor". ROA.14-51079.256-267. The PACA Procedures Order also contained the following additional relief which Debtors <u>never even requested</u> in the PACA Procedures Motion:

> [Debtors' Counsel] shall be 'entitled' to be paid attorneys' fees and costs from the PACA trust funds for the services rendered pursuant to this Order.

ROA.14-51079.265.¶ 15 B.

On August 14, 2012, Debtors' Counsel filed its first application for attorneys' fees to be paid out of the non-estate property the Debtors held subject to the PACA trust. ROA.51080.167-210. Kingdom Fresh Group filed an objection contending the Bankruptcy Court lacked subject matter jurisdiction to surcharge non-estate property the Debtors merely held in an express statutory trust to pay the administrative expense claims of the Debtors' hired professionals. ROA.51080.211-223. On September 25, 2012, the Bankruptcy Court signed an Order granting Debtors' Counsel's first fee application over this objection (hereinafter the "First Fee Order"). ROA.51080.244-247 Kingdom Fresh Group timely appealed the First Fee Order to the U.S. District Court for the Western District of Texas.

On November 14, 2012, Debtors' Counsel filed his second application to have his attorney's fees paid out of the non-estate trust funds his clients were holding pursuant to the PACA trust. Kingdom Fresh Group filed another objection. On December 13, 2012, the Bankruptcy Court signed an order granting Debtors' Counsel's second fee application over this second objection (hereinafter the "Second Fee Order"). Kingdom Fresh Group timely appealed the Second Fee Order to the U.S. District Court for the Western District of Texas.

The District Court consolidated the appeals of the First Fee Order and the Second Fee Order into Appeal Case Number 5:12-cv-01127(hereinafter the "First District Court Appeal"). ROA.51080.590-91. While the District Court was still considering this appeal, Debtors' Counsel filed a motion to refer the competing claims of IBC Bank, the Debtors, PACA Claimants and the Principal to mediation. ROA.14-51079.371-373 (hereinafter the "Mediation Motion"). Nowhere in the Mediation Motion did Debtors' Counsel ever request that his fees be paid with non-estate property for attending the mediation. Id.

On March 14, 2013, the Bankruptcy Court signed an Order granting the Mediation Motion. ROA.14-51079.375-379 (the "Mediation Order"). The Mediation Order similarly states that Debtors' Counsel submitted a form order to chambers. Id. at 379. Just as with the earlier PACA Procedures Order, Debtors' Counsel slipped a

new provision into the submitted draft order that added relief ***not even mentioned*** in the motion.  ROA.14-51079.378 ¶10.    At the mediation, Debtors' Counsel purported to represent the Debtors (his current clients), various creditors of the Debtors and the Principal (his former client).  Debtors' Counsel then purported to negotiate a global settlement of all claims against all parties despite all these glaring conflicts.

On September 27, 2013, the District Court entered an Order vacating the Bankruptcy Court's Fee Orders and specifically held as follows:

> Only when PACA trust beneficiaries receive full payment may a PACA trustee use the remaining PACA trust funds to pay the trustee's attorney fees.  Any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations.

ROA.14-51080.639.

Debtors' Counsel timely filed a motion for reconsideration in the First District Court Appeal.   ROA.14-51080. 641-650.   While Debtors' Counsel's motion for reconsideration was still pending in the District Court, Debtors' Counsel still pressed ahead in Bankruptcy Court with a third (3ʳᵈ) application for fees to be paid from the non-estate property his client merely held in trust for the PACA beneficiaries.  ROA.51079.388-513.  Kingdom Fresh Group again filed a written  objection, stating that Debtors' Counsel's simultaneous representation of the Debtors and PACA creditors at the mediation created an actual conflict of interest sufficient to deny all compensation. ROA.51079.517-524. At the November 4, 2013 hearing on the third

7

(3rd) fee application, Kingdom Fresh Group also raised a separate, oral objection based on the District Court's opinion and cited to the above-quoted language from the District Court numerous times[1].

Without even waiting for the District Court to decide the 59(e) Motion, the Bankruptcy Court signed an order approving Debtors' Counsel's third fee application over Kingdom Fresh Group's written and oral objections and against the clear direction of the District Court (hereinafter the "Third Fee Order"). ROA.51079.729-737. Kingdom Fresh Group timely appealed the Third Fee Order (hereinafter the "Second District Court Appeal").

On September 9, 2014, the District Court entered a thirty-nine (39) page opinion denying Debtors' Counsel's Rule 59(e) motion for reconsideration. ROA.14-51080.882-920. On September 22, 2014, the District Court also vacated the Third Fee Order. ROA.14-51079.1377-1422. However, the District Court refused to consider whether Debtors' Counsel's acts in this case created an actual conflict of interest. Id. Debtors' Counsel timely filed a notice of appeal in both the First and Second District Court Appeals. In the Second Appeal, Kingdom Fresh Group timely

---

[1]The transcript of the November 4, 2013 hearing was inadvertently omitted from the original record on appeal. However, on December 8, 2014 Debtors' Counsel filed a "Motion to Supplement the Record . . ." to add the entirety of the November 4, 2013 transcript into the record. Kingdom Fresh Group agreed to the Motion, and on December 16, 2014 this Honorable Court granted the Motion. For ease of reference, references to the November 4, 2013 hearing (which is not in the original record) are notated "11.04.13 Hearing (Page Number)").

cross-appealed the District Court's failure to consider the "conflict of interest" issue raised in Second District Court Appeal.

## SUMMARY OF THE ARGUMENT

A)     <u>Kingdom Fresh Group's Principal Brief Issue</u> - (Conflict of Interest)

This Honorable Court should reverse the District Court's refusal to even consider how the conflict of interest issue should deny all requested compensation. Debtors' Counsel represented just about every party at one point or another during the course of this litigation.    Prior to the bankruptcy, Debtors' Counsel filed appearances on behalf of the Debtors and Principal in the District Court Cases.    In the bankruptcies, Debtors' Counsel filed appearances for the Debtors.    The Debtors clearly hired Debtors' Counsel as their §327(e) Counsel.    In his affidavit, Debtors' Counsel admitted receiving payment on behalf of the Debtors, and averred ***"my Firm*** ***will accept any fee from any other party or parties in these cases***, except as before mentioned.    ROA.14-51079.280-283 ¶8 (emphasis added).

Debtors' Counsel filed objections against the claims of the very same PACA creditors he now seeks to have pay his fees.    Further, Debtors' Counsel attended a mediation where he purported to represent numerous PACA *creditors* which held claims against his other clients (the Debtors).    He then purported to negotiate a global settlement and release of the Debtors (his current client) and the Principal (his former

client).    Debtors' Counsel's actions in this case clearly created numerous actual conflicts of interest sufficient to deny all requested compensation from any source.

Contrary to Debtors' Counsel's assertions, the Bankruptcy Court never made a finding that Debtors' Counsel's simultaneous representation of both the Debtors and **the PACA creditors** was not an actual conflict of interest.    Debtor's Counsel continues his effort to mislead this Honorable Court claiming a Bankruptcy Court ruling on another conflict in January 2012 somehow approved another conflict that arose over one (1) year later in April 2013.    The only time the Bankruptcy Court addressed a conflict was in a January 24, 2012 hearing.    The U.S. Trustee was concerned that each Debtor might need its own counsel due to all the cross claims between them (hereinafter the "Cross-Claims").    The Bankruptcy Court said Debtors Counsel could represent both Debtors, but never even addressed the year-later issue of representing the Debtors and <u>creditors</u> at the same time.    The Bankruptcy Court clearly did not have the facts of the April 2013 conflicts back in the January 2012 hearing.    Thus, the effort by Debtor's Counsel to take shelter behind that ruling must fail.

B)    Kingdom Fresh Group's Response Brief Issues

i) Subject Matter Jurisdiction - The District Court properly had subject matter

jurisdiction over all three (3) appeals because all three (3) fee orders Kingdom Fresh Group appealed were "final orders" under the more flexible definition of finality in bankruptcy proceedings. <u>See</u> 28 U.S.C. § 158(a)(1). Even if any of the three (3) Fee Orders were not "final", the District Court still had subject matter jurisdiction pursuant to 28 U.S.C. § 158(a)(3).

ii) Implied Consent/Judicial Estoppel - The District Court properly rejected Debtors' Counsel's "implied consent" and judicial estoppel arguments. Debtors' Counsel failed to show how the District Court clearly erred when it rejected this "implied consent" argument. Further, Debtors' Counsel failed to show how the District Court erred when it found judicial estoppel did not bar Kingdom Fresh Group's objections. The District Court reviewed the record in detail and found Kingdom Fresh Group never took any position in bankruptcy court which was inconsistent with Kingdom Fresh Group's objections. In its principal brief, Debtors' Counsel failed to  even allege any such"inconsistent position"(a required element of judicial estoppel) to this Honorable Court. The reason for this is simple. The record is completely devoid of any such "inconsistent position." Accordingly, Debtors' Counsel cannot sustain any such claim of judicial estoppel.

iii)     The <u>Alanco</u> Ruling - The District Court properly considered the effect of the ruling in <u>C.H. Robinson v. Alanco</u>, 239 F. 3d 483 (2nd Cir. 2001). Contrary to

all the efforts to distinguish the <u>Alanco</u> ruling, the District Court properly found the <u>Alanco</u> fact pattern is directly on point. In the <u>Alanco</u> case, an attorney for the produce debtor tried to claim an attorney's lien on PACA trust funds to pay his fees while there were still unpaid beneficiaries of that PACA trust. In this case, Debtors' Counsel admittedly sought and received payment from PACA trust funds before the PACA trust beneficiaries were fully paid. In his zeal to avoid the effect of the <u>Alanco</u> ruling, Debtor's Counsel now simply contends he never represented the Debtors and was instead "Special PACA Counsel" representing the trust itself. Not only is this a "made up" position with no support in the law, it remains undisputed that Debtor's Counsel is not a PACA trust beneficiary. As such, his administrative expense claim for his fees cannot jump ahead of the unpaid PACA trust beneficiaries.

The District Court correctly relied on <u>Alanco</u> in holding "any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations." ROA.14-51080.639. The District Court got it 100% right when it vacated the orders allowing this administrative expense claim of one of the Debtors' hired professionals to be paid from trust funds before the trust's beneficiaries were paid in full.

iv) The District Court properly vacated all three (3) Fee Orders. This case presents a very simple, straightforward issue: whether PACA allows a produce

debtor to surcharge non-estate property it holds in trust (property it does not own) to pay its hired professionals before making full payment to the trust's beneficiaries. Congress has clearly said "no". In fact, the whole reason for the 1984 amendments that added the trust provisions was to put the PACA trust funds outside of the reach of any bankruptcy court. Thus, no PACA trust funds could be consumed by the claims of the estate's hired professionals because the trust funds were not within the scope of "property of the estate under § 541(d). Federal Courts have also clearly said "no".

Debtors' Counsel is clearly not a trust beneficiary, yet he currently has almost $400,000.00 of PACA trust funds in his pocket. Despite promising the Bankruptcy Court he would return these funds to the Court's Registry if Judge Ezra denied his Rule 59(e) motion, Debtor's Counsel has refused to restore these funds to the Court's Registry. This Honorable Court should continue to follow the clear direction of Congress and not allow a produce debtor in bankruptcy to dip into non-estate PACA trust funds to pay its hired professionals. To do so would be to permit *the exact harm* which Congress sought to remedy when it placed the PACA trust funds beyond the reach of any bankruptcy estate. After all, this Circuit has repeatedly ruled a bankrupt Debtor's "sole ***permissible administrative act*** with regard [to non-estate property] would be to pay over or endorse the sums due to the beneficial owners of the

13

property." Georgia Pacific v. Sigma Service, 712 F.2d 962, 968 (5th Cir.

1983)(emphasis added); Matter of Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th

Cir. 1985)("Congress did not mean to authorize a bankruptcy estate to benefit from

property the debtor did not own.").

### PACA AND THE BANKRUPTCY CODE

Bankruptcy Code Section 541(d), states, in relevant part, as follows:

> Property in which the debtor holds, as of the commencement of the case,
> only legal title and not an equitable interest, . . . . becomes property of
> the estate . . . . only to the extent of the debtor's legal title to such
> property, *but not to the extent of any equitable interest in such property*
> *that the debtor does not hold.*

11 U.S.C. 541(d) (emphasis added).

"PACA establishes a scheme in which a purchaser of produce on credit (a

'Produce Debtor') is required to hold the Produce and its derivatives or proceeds in

trust for the unpaid seller. Ordinary principles of trust law apply to the trusts created

by [PACA], so that the Produce Debtor holds the legal title to the Produce and its

derivatives or proceeds but the seller retains an equitable interest in the trust property

pending payment." Endico Potatoes, v. CIT Group/Factoring, 67 F.3d 1063, 1067 (2nd

Cir.1995). "Courts have recognized that the intent of Congress in enacting PACA's

trust provision was to provide unpaid produce sellers with greater protection from the

risk of default by buyers. Endico Potatoes, 67 F.3d at 1067; In re Kornblum, 81 F.3d

at 283 (Congress enacted the trust provision 'to broaden the protections afforded to produce suppliers'). *See also* <u>Tanimura & Antle, v. Packed Fresh Produce,</u> 222 F.3d 132, 135-136 (3rd Cir. 2000); <u>Hiller Cranberry Products, v. Koplovsky</u>, 165 F.3d 1, 6 (1st Cir. 1999).  In the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate. <u>Morris Okun, v. Harry Zimmerman,</u> 814 F. Supp. 346, 348 (S.D.N.Y. 1993) (PACA trust assets are not part of bankruptcy estate). The "Bankruptcy Code 'plainly excludes [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition'"). <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 205 n. 10, (1983).

Congress enacted the PACA statute back in 1930 to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 C.F.R. § 45735 (1984).  In 1984, Congress noticed several problems were on the rise that still jeopardized the financial integrity of the nation's produce supply.  One of these concerns was how "business failures and bankruptcy losses with no possibility of meaningful recovery have shown a steady increase.  These factors combine to prejudice sellers' ability to obtain prompt payment for produce.  It is these problem areas that the provisions of Pub. L. 98-273 (the "trust amendments") are intended to overcome." <u>Id</u>.  The regulation's history goes on to state as follows:

If a buyer or receiver declares bankruptcy, makes an assignment for the benefit of creditors, declares its intention to sell under the bulk sales law, or otherwise terminates its business, trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid. This follows the precedent of the similar statutory trust imposed on certain assets of meat packers, after which the statutory trust provision of the PACA has been patterned.

Id.

Based on this legislative history, the Court in In re Fresh Approach, 51 B.R. 412 (Bankr. N.D. TX 1985) was one of the first to fully explain how the PACA trust interacts with the Bankruptcy Code. The Fresh Approach Court went on to state as follows:

This Court previously held that the provisions of the 1984 PACA amendments allow for the creation of a trust for the benefit of unpaid produce creditors . . . and that the produce related assets (and proceeds thereof) which formed the corpus of said trust would not be considered property of the estate. That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute. . . As a result, the beneficiary of such a trust would be entitled 'to priority in payment as to all the assets of the bankrupt, ahead of the claims of creditors who have valid security interests, *ahead of the administrative costs and expenses incurred in this court* and ahead of all other priority and general creditors.'

Id. at 418-19 (emphasis added) citing 4 Collier on Bankruptcy, 541.13 at 541-66 (15th ed. 1983) and *citing* Matter of Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir. 1985)("[a]s a general rule, it must be held that section 541(d) prevails over the

16

trustee's strong arm powers . . . Congress did not mean to authorize a bankruptcy estate to benefit from property the debtor did not own."); Georgia Pacific v. Sigma Service, 712 F.2d 962, 968 (5th Cir. 1983)("if all or part of the money so owed was subject to a . . trust in favor of the suppliers . . . the bankruptcy court would be required to recognize those equitable interests and, perhaps, the debtor in possession's sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property"); In re Kennedy & Cohen, 612 F.2d 963, 965 (5th Cir. 1980).

The Fresh Approach Court fully reviewed the text of the PACA trust amendments, the regulations and the 5th Circuit's ruling in In re Gotham Provision, 669 F.2d 1000, 1012 (5th Cir. 1982)(under the similar express statutory trust that served as the template for the PACA trust). In re Fresh Approach, 51 B.R. at 420. After reviewing all this, the Fresh Approach Court concluded as follows:

> This express exclusion of trust assets from property of the estate indicates that Congress intended a priority scheme consistent with that applied in cases of judicially imposed constructive trusts, i.e., that assets subject to the PSA (and by analogy, the PACA) trust were not property of the estate, and were subject to distribution outside the distribution contemplated in bankruptcy. . . . Indeed, to hold otherwise would be to defeat the very purpose of the PSA and PACA trusts. Debtor contends that it should be permitted to retain the use and possession of the trust assets pending formulation and approval of a plan of reorganization . . . . It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a priority

status for unpaid produce claimants, *priming even the administrative claims* which normally stand first in line in a bankruptcy distribution. To approve a plan which grants anything but such a priority would be in direct contravention of the purpose and intent of the PACA amendments. It must be remembered that PACA was not enacted to protect those in Debtor's shoes, but rather to prevent the chaos and disruption in the flow of perishable agricultural commodities sure to result from an industry-wide proliferation of unpaid obligations. While in isolation this may seem a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry. Congress has plainly decided it would be less disastrous to risk the liquidation of a single purchaser than to threaten the entire production chain with insolvency. It is not the function of this Court to pass upon the wisdom of that decision.

Id. at 420 (emphasis added).

When Congress placed the PACA trust assets clearly outside the scope of "property of the estate," that accomplished two (2) things. First, the Bankruptcy Courts' subject matter jurisdiction was limited to simply directing the Debtors to deliver the non-estate trust assets to the unpaid trust beneficiaries. Second, the Bankruptcy Courts were unable to surcharge, create any interests in, or otherwise encumber, those non-estate trust assets.

The leading case on the first limitation is Borrego Springs Bank v. Skuna River Lumber, 564 F.3d 353 (5th Cir. 2009). In Borrego Springs Bank, the Debtor hired an auctioneer to market and sell some assets from the estate. Id. at 354. The Bankruptcy Court entered an order authorizing the sale of the assets out of the bankruptcy estate

18

to the Bank "free and clear of all liens, claims, encumbrances." Id. at 354-55. Nearly

one (1) month later, the auctioneer sought to recover its fees and costs of the auction.

Id. at 355. The Bankruptcy Court surcharged the "assets of the debtor's bankruptcy

estate" under 11 U.S.C. § 506(c) and sought to secure payment for the auctioneer by

imposing a judicial lien on the assets the Bank purchased. Id. The Bank appealed the

order to the District Court only to have the District Court approve both the surcharge

and the judicial lien. Id. at 354.

On appeal to the 5th Circuit, the Bank argued the Bankruptcy Court lost all

jurisdiction over the assets once they were no longer part of the bankruptcy estate.

Id. at 355. At the time the Bankruptcy Court acted to create a surcharge and judicial

lien in the assets, the assets were admittedly not "property of the estate" as required

for any such action. Id. The 5th Circuit in Borrego Springs Bank simply stated "[w]e

agree" and reversed the District Court and the Bankruptcy Court. Id. In further

explaining the ruling, the 5th Circuit stated as follows:

> Generally, administrative expenses such as those incurred in the sale
> here are satisfied out of unencumbered assets in the bankruptcy estate.
> See In re Delta Towers, 924 F.2d 74, 76 (5th Cir. 1991). However,
> section 506(c) of the Bankruptcy Code provides an exception to this
> general rule that allows administrative expenses to be surcharged against
> a creditor's collateral: 'The trustee may recover from property securing
> an allowed secured claim the reasonable, necessary costs and expenses
> of preserving, or disposing of, such property to the extent of any benefit
> to the holder of such claim.' 11 U.S.C. § 506(c). *This procedure,*

> *however, only applies to assets held within the bankruptcy estate.* Although this court has never explicitly addressed the issue, we agree with the Seventh Circuit that when property is transferred out of a bankruptcy estate free and clear of all liens, the bankruptcy court ceases to have jurisdiction over that property. *See, e.g.*, In re Edwards, 962 F.2d 641, 643 (7ᵗʰ Cir. 1992); *see also* In re Xonics, 813 F.2d 127, 131 (7ᵗʰ Cir. 1987). ***Once the assets . . .are not property of the estate, [they] may not be surcharged*** under *section 506(c).*

564 F.3d at 355 (emphasis added). The 5ᵗʰ Circuit went on to quote the 7ᵗʰ Circuit as

follows:

> [The creditor] was seeking a determination of its right to property that had passed outside that court's control when the property was sold free and clear of all liens. Since the property was no longer part of the bankrupt estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the bankruptcy estate, the bankruptcy court had no jurisdiction to determine rights to the property.

Id. at 356 *quoting* In re Edwards, 962 F.2d 641, 643 (7ᵗʰ Cir. 1992).

## **ARGUMENT**

PRINCIPAL BRIEF ISSUE:

    I.    THE DISTRICT COURT ERRED WHEN IT FAILED TO CONSIDER WHETHER DEBTORS' COUNSEL'S ACTS OF SIMULTANEOUSLY REPRESENTING THE DEBTORS AND THE PACA CREDITORS CREATED AN ACTUAL CONFLICT OF INTEREST SUFFICIENT TO DENY ALL COMPENSATION

A)    Standard of Review

Whether the District Court failed to consider or accord proper weight or

significance to relevant evidence are questions of law this Honorable Court reviews *de novo*. Fowler v. Incor, 279 Fed. Appx. 590, 593 (10th Cir. 2008); Pupitone v. Biomatrix, 288 F. 3d 239, 250 (5th Cir. 2002); Associated Int'l Ins. v. Blythe, 283 F. 3d 780, 783 (5th Cir. 2002).

B)    Analysis

This Honorable Court should reverse the District Court's failure to even consider whether Debtors' Counsel's actions created an actual conflict of interest. This Honorable Court should then order Debtors' Counsel to disgorge any and all fees he received for services rendered in both bankruptcies because of these actual conflicts of interest. See 11 U.S.C. §327( e).

i)    *Legal Standard*

11 U.S.C. § 327(e) states, in pertinent part, as follows:

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if **such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.**

11 U.S.C. §327(e).

Where a law firm is found not to be disinterested, disallowance of fees is appropriate. In re Kendavis Industries, 91 B.R. 742, 753 (Bankr. N.D. TX 1988),

21

*citing* Woods v. City National Bank & Trust Co, 312 U.S. 262, 266 (1941); Wolf v.

Weinstein, 372 U.S. 633, 641(1963); In re Georgetown of Kettering, 750 F. 2d 536

(6th Cir. 1984); In re Michigan General Corp., 77 B.R. 97 (Bankr. N.D. Tex. 1987).

A court may deny compensation for services provided by an attorney who holds such

an adverse interest.  In re West Delta Oil Company, 432 F. 3d 347,354 (5th Cir. 2005).

These standards are "strict" and . . . . attorneys engaged in the conduct of a

bankruptcy case "should be free of the slightest personal interest which might be

reflected in their decisions concerning matters of the debtor's estate or which might

impair the high degree of impartiality and detached judgment expected of them during

the course of administration. Id. at 355.

   An attorney who fails to remain free of conflicts, or ***one who serves conflicting***

***interests during a case may be denied all compensation.***   In re Wilde Horse

Enterprises, 136 B.R. 830 (C.D. Ca 1991)(emphasis added), *citing* In re land, 116

Bankr. 798, 803 (D. Col. 1990).  A conflict exists where the attorney represents

interests in a proceeding of both the debtor and a creditor. Id. *citing* In re Roberts, 46

Bankr. 815, 823 (Bankr. Utah 1985).   Certain conflicts that a client could waive after

full disclosure outside of the bankruptcy context, such as simultaneous representation

of the client and the client's creditor, ***are prohibited by the Bankruptcy Code itself***

***from being waived.***   In re Diamond Mortgage Corp, 135 B.R. 78, 90 (Bankr. N.D. IL

1991)(emphasis added).  Thus, the conflict of interest rules are more strictly applied in the bankruptcy context than in other areas of law, at least insofar as the Debtor's retention of professionals is concerned.  Id.

An actual conflict of interest has been defined as "an active competition between two interests, where one interest can only be served at the expense of the other." In re Diamond Mortg. Corp., 135 B.R. 78, 90 (Bankr. N.D. IL 1990). TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT Rule 1.06(a) and Comments 2, 4, 5 and 6.

ii)     _The Actions of Debtors' Counsel Created An Actual Conflict of Interest_

Debtors' Counsel in this case represented just about everyone in this case at one time or another.  He tried to be the pitcher, the catcher and the batter.  Debtors' Counsel represented the Debtors, as well as Principal, with personal liability interests adverse to the corporate debtors and the PACA creditors.  In his affidavit to get hired as the Debtors' § 327(e) Counsel, Debtors' Counsel stated he would not accept any payment from any source other the Debtors' estates.  ROA.14-51079. 280-283 ¶8. Despite this statement in his "hire me" affidavit, Debtor's Counsel learned the estates were administratively insolvent.  Thus, Debtors' Counsel set about trying to get paid from another source - the very same trust funds his clients were entrusted to guard for the trust's beneficiaries.

23

Debtors' Counsel even filed objections to the PACA claims on behalf of the Debtor, yet seeks to have the PACA creditors pay him for these clearly adverse efforts to disallow their PACA claims.   ROA.14-51079.288-293.   The same Debtors' Counsel defended the Debtors and Principal in the three (3) District Court Cases immediately prior to the Debtors filing their bankruptcy petitions. The same Debtors' Counsel appeared at the mediation on behalf of PACA *Creditors* to negotiate a settlement between those unpaid PACA Creditors, the Debtors, Principal and IBC Bank.  Settlement gets much easier when you represent both sides.

On January 13, 2012, ten (10) days into the Bankruptcy case, the  Superior debtor filed an application to employ Debtors' Counsel as its § 327(e) Counsel. ROA.14-51079.280-283.   In order to convince the Bankruptcy Court to approve his appointment as Debtors' Special Counsel, the Debtor's Counsel prepared and signed a  § 327(e) affidavit on January 12, 2012 (hereinafter the "Affidavit").   In that Affidavit, Debtors' Counsel made the following representation to the Bankruptcy Court:

> except for continuing representation of the Debtor, neither I nor the Firm has represented or *will represent any other entity* in connection with these cases, and neither I nor my Firm *will accept any fee from any other party or parties* in these cases, except as before mentioned.

ROA.14-51079.280-283 ¶ 8 (emphasis added).

On September 25, 2012, December 13, 2012, and August 30, 2013, Debtors' Counsel clearly sought compensation from sources <u>other than the Debtors</u>.  In fact, Debtors' Counsel sought payment from assets his Debtor-clients admittedly <u>did not own</u> and only held in trust for its unpaid PACA creditors.  These non-estate assets are owned by creditors with claims <u>directly adverse</u> to the Debtors and their estates, and are the same creditors Debtors' Counsel was litigating against in the District Court Cases.  Thus, Debtors' Counsel is not only seeking payment from adverse parties, he is also seeking payment from funds that his clients do not even own (non-estate property).

Further, Debtors' Counsel obtained written authorization from certain PACA creditors to represent them at the Mediation.  These "authorizations" included Canon Potato Company. ROA.14-51079.717.  Across the table from the PACA Creditors at that very same Mediation were the Debtors (Debtors' Counsel's current client), and the Principal (Debtors' Counsel's former client).  This dual representation clearly created an actual conflict of interest for Debtors' Counsel.  Congress clearly placed the PACA trust assets beyond the reach of the Bankruptcy Court by clearly taking such assets outside of the "property of the estate" definition in 11 U.S.C. §541(d).  Accordingly, Debtors' Counsel was clearly switching sides throughout this case and clearly took substantive acts on behalf of the Debtors and against the PACA

claimants.  All this while seeking to force the those same adverse creditors to pay for

the Debtors' defense and objections to <u>their own PACA claims</u>.

The Principal's interests are adverse as well since he could be personably liable

for any sums owed to the PACA creditors if the corporate assets were insufficient to

pay all approved PACA claims. When Debtors' Counsel represented PACA Creditors

at the Meditation and purported to negotiate a global settlement, Debtors' Counsel put

himself in a position where he would be unable to consider, recommend or carry out

an appropriate course of action for those PACA creditors without violating Debtors'

Counsel's duties to his other clients, the Debtors.  By doing so, Debtors' Counsel

clearly created an actual conflict of interest in plain violation of 11 U.S.C. § 327(e).

The following provides a brief synopsis of the directly adverse positions

Debtors' Counsel has taken in the Bankruptcy litigation and related matters:

1. Defending the Debtors and <u>the Principal</u> against PACA creditors in District Court Cases.
2. Seeking employment by the bankruptcy estate to continue representation of the <u>Debtors</u> in PACA related work as § 327(e) counsel. ROA.14-51079. 280-283.
3. Filing objections to certain PACA creditors' claims on behalf of the Debtors.  ROA.14-51079.288-293.
4. Receiving a $33,000.00 payment on the Debtors' behalf (ROA.14-51079. 280-283 ¶10) and subsequently receiving payment from the PACA creditors.
5. Seeking and obtaining written authorization from PACA creditors to <u>represent</u> <u>their interests</u> at the Mediation <u>against</u> the PACA Creditors (his current client) <u>and</u> the Principal (his former client). ROA.14-51079.

26

717.

Representing such clearly adverse interests in the same proceeding warrants denial of any compensation to Debtors' Counsel. The appropriate remedy is disgorgement of all compensation received to date from any source. In re Kendavis Industries, 91 B.R. 742, 753 (N.D. TX 1988)("the Court may also order the return of fees already paid"). In fact, to support his application for compensation from the PACA creditors, Debtor's Counsel attached invoices he issued to the Debtor, in the Debtor's own name. ROA.14-51079.405. Incredibly, Debtors' Counsel issued bills to the Debtors yet seeks to be paid from the creditors . These invoices are emblematic of the duplicity repeatedly demonstrated in this case.

11 U.S.C. § 327(e) clearly prohibits any such dual roles with respect to the PACA trust. Based on the clear actions of this Debtors' Counsel to both work for and against the Bankruptcy Estates while certifying his "refusal to accept payment from any source other than his Debtor clients," this Honorable Court should hold Debtor's Counsel to his word. He should be allowed no funds from any source other than his clients' own property. That is ***exactly*** what he agreed to when he sought and obtained this job.

iii)    *The Bankruptcy Court Merely Ruled Debtors' Counsel could represent both of The Debtors, There Was Never a Finding Debtors' Counsel Could Simultaneously Represent the Debtors and Creditors*

27

In its Principal brief, Debtors' Counsel claims at the January 24, 2012 hearing, the U.S. Trustee raised the same conflict of interest argument "now being asserted on appeal by [Kingdom Fresh Group]" and the Bankruptcy Court found "no disabling conflict under both 11 U.S.C. § 327(e) and the Texas Rules of Professional Conduct". See Debtors' Counsel's Brief p. 8. This is simply inaccurate, as well as physically impossible. The conflict at issue did not even arise until April 2013 at the Mediation so there is simply no way the Bankruptcy Court could have discussed it over a year earlier in January 2012.

The potential conflict of interest all parties discussed with the Bankruptcy Court at the January 24, 2012 hearing was the fact that debtors Delta and Superior each had PACA claims *against each other* (hereinafter the "Cross-Claims"). Thus, it was only these Debtor against Debtor claims which the Bankruptcy Court addressed. The concern was how a single § 327(a) and § 327(e) counsel could be simultaneously representing both estates (both Debtors) in these Debtor against Debtor Cross-Claims.

At the beginning of the January 24, 2012 hearing, Debtors' § 327(a) counsel immediately brought this potential conflict of interest of the Cross-Claims to the Court's attention as follows:

Mr. Ayers:   And I want to start by pointing out to the Court that I

> represent Delta and I represent Superior. ***Craig Stokes represents Delta and represents Superior.*** Guess what? They have PACA claims, one against the other. And the first thing that the Court needs to be aware of is this motion, and the orders under this motion, allow Craig Stokes to sue my clients and allow me to sue his clients, who happen to be the same people.

ROA.14-51079.1067.12-20 (emphasis added). Indeed, the U.S. Trustee only raised a conflict of interest concern as to the Cross Claims between Debtors, and explained her concerns later at the hearing as follows:

> Ms. Ratchford:     The U.S. Trustee has a concern that in the form of the Delta order, and, as I understand it, in the form of the Superior order, there is going to be a specific finding that the ability of Langley and Banack and Mr. Stokes' firm to object to the various **cross-claims** is not a conflict. I'm not comfortable in suggesting to the Court that the Court should make that finding.
>
> I understand the practicalities, but both Mr. Stokes and Langley & Banack have pending applications _to be employed as Debtors' counsel_. And I don't believe it's appropriate that the Court make a final finding that there is no conflict, because I think the – the reality is, there probably is an actual conflict between the two Debtors as it relates to the **cross-PACA claims**.

ROA.14-51079.1072.5-20. (emphasis added).

Finally, the Bankruptcy Court explicitly limited its finding of "no conflict of interest" to the Cross Claims only, and said:

> The Court:   Okay.   I want to make a finding today that the <u>precise</u>
> <u>activities that are described here on the record today</u> do not
> constitute a conflict.

ROA.14-51079.1078.20-22.   Despite this clear limitation, Debtors' Counsel now seeks to mislead this Honorable Court into thinking the Bankruptcy Court approved the "year into the future" simultaneous representation of Debtors <u>and its creditors</u>. Accordingly, this Honorable Court should reverse the District Court's failure to even consider whether  Debtors' Counsel had an actual conflict of interest in this case in clear violation of § 327(e), and order Debtors' Counsel to disgorge all fees received for creating an actual conflict of interest in this case.

RESPONSE BRIEF ISSUES

II.     THE DISTRICT COURT HAD PROPER SUBJECT MATTER <u>JURISDICTION OVER ALL THREE (3) FEE ORDERS</u>

A)     <u>Standard of Review</u>:

The holding of a bankruptcy court (or a district court hearing an appeal from the bankruptcy court) that it has jurisdiction is a legal determination which this Honorable Court reviews *de novo.* <u>Bass v. Denney(*In re* Bass)</u>, 171 F. 3d 1016, 1020 (5th Cir. 1999).

B)     <u>Analysis</u>:

i)     *<u>Debtors' Counsel's "Jurisdiction" Argument Is a Red Herring</u>*

Kingdom Fresh Group raised two (2) objections to Debtors' Counsel receiving payment from the PACA trust funds which are now before this Honorable Court: 1) PACA and its regulations prohibit payments to non-beneficiaries like Debtors' Counsel before beneficiaries receive full payment (hereinafter "Argument #1"); 2) Debtors' Counsel had an actual conflict of interest sufficient to deny all compensation (hereinafter "Argument # 2"). With its "jurisdiction" argument, Debtors' Counsel is trying to ignore Argument # 1 on the Third Fee Order when it was clearly raised below.

This "jurisdiction" argument is a red herring for at least two (2) reasons. First, the Bankruptcy Court clearly considered Argument # 1 so the District Court's consideration of Argument #1 was entirely appropriate. At the November 4, 2013 Bankruptcy Court hearing on the Third Fee Order expressly addressed Argument #1 as follows:

Mr. Hillison: Your Honor, again, I – I object, to the extent

The Court:   On what basis?

Mr. Hillison: To the extent that it's inconsistent with the District Court Order, and that it **would take PACA trust funds and pay them to the trustee of the PACA trust, rather than a PACA trust beneficiary**.

11.04.13 Hearing p. 40 lines 23-25, p.41 lines 1-5 (emphasis added).

The Court: All right. And, Mr. Hillison, **same objection, sir**?

31

Mr. Hillison:  Yes, Your Honor.

11.04.13 Hearing p. 42 lines 19-21 (emphasis added).

The Court:  All right.  Mr. Hillison, are you raising the same objection?

Mr. Hillison:  **Same objection, Your Honor**.

The Court:  All right.  **<u>Your *objection is noted*</u>**, but it's overruled.

11.04.13 Hearing p. 44 lines 15-19 (emphasis added).

Mr. Hillison:  Absolutely.  And, your Honor, my objection is renewed.  The September 27 order from Judge Ezra did not address the mediation order.  It was not before the Court.  However, Judge Ezra's findings are directly on point, and I will read it again into the record: Only one (*sic*) PACA trust beneficiary has received full payment (Inland cmb) PACA trustee were earning PACA trust funds to pay the trustee's attorney's fees.  **Any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations.**  Therefore, if this Honorable Court were to take any PACA trust money and pay Mr. Stokes, it would go directly against PACA, its regulations, and an order from Judge Ezra.

11.04.13 Hearing p. 47 lines 15-25, p. 48 lines 1-5 (emphasis added).  Thus, contrary to the assertions of Debtors' Counsel, Kingdom Fresh Group raised Argument #1 at least than **five (5) times** at the November 4, 2013 hearing.

The second reason is because the District Court had the absolute discretion to follow PACA and its regulations, and "take up" Argument # 1, even if the parties did not raise it themselves.  When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and  **<u>apply the proper construction of governing</u>**

32

**law**.  Kamen v. Kemper Fin. Services, 500 U.S. 90, 99 (1991)(emphasis added).

Thus, the District Court was entirely within its discretion to **follow the law** and apply

PACA and its applicable regulations to rule Debtors' Counsel could not receive

payment from PACA trust funds unless and until all PACA trust beneficiaries were

paid in full. Accordingly, this "jurisdiction" argument lacks any support in the record.

    ii)    *Legal Standard for Finality In Bankruptcy Cases*

Even ignoring the factual inaccuracies of Debtors' Counsel's "jurisdiction"

argument and the District Court's inherent discretion to follow the law regardless of

what the parties chose to argue, the District Court properly exercised subject matter

jurisdiction over all three (3) Fee Orders because all three Fee Orders were "final" for

purposes of 28 U.S.C. § 158(a)(1).   In its principal brief, Debtors' Counsel argues the

District Court lacked subject matter jurisdiction over Fee Orders 1 and 2 because Fee

Orders 1 and 2 were interlocutory.   See Debtors' Counsel's Brief p. 8.   Debtors'

Counsel provides absolutely zero support for this argument.

"Concepts of finality . . .  are less concrete in the bankruptcy context, and, thus,

principles disfavoring appeal of orders that do not dispose of an entire case are often

less rigorously adhered to in bankruptcy cases."   In re Transtexas Gas Corp v.

TransTexas Gas, 303 F. 3d 571,580 (5th Cir. 2002), *citing* Bartee v. Tara Colony

Homeowners Assoc. (*In re* Bartee), 212 F.3d 277, 282-83 (5th Cir. 2000).   See also

La. World Exposition v. Fed Insurance (*In re* La World Exposition), 832 F. 2d 1391, 1395 (5th Cir. 1987).  This is so particularly when, as here, on independent decision <u>materially affects</u> the rest of the bankruptcy proceedings.  <u>In re England</u>, 975 F. 2d 1168, 1171 (5th Cir. 1992).  Separate and discrete orders in many bankruptcy proceedings determine the extent of the bankruptcy estate and influence creditors to expend or not to expend effort to recover monies due them.  <u>Id</u>.

An appealed bankruptcy order must constitute either a final determination of the rights of the parties to secure the relief they seek, **or a final disposition of a discrete dispute within the larger bankruptcy case for the order to be considered final**.  <u>Bartee v. Tara Colony Homeowners Ass'n</u>, 212 F. 3d 277, 282 (5th Cir. 2000) (emphasis added); <u>IRS v. Orr</u>, 180 F. 3d 656, 658 (5th Cir. 1999).

### *iii)     All Three (3) Fee Orders Were Final Orders*

All three (3) Fee Orders were final orders according to well-established precedent in this Circuit.  When Debtors' Counsel filed each of its three (3) fee applications, it was seeking to be paid from non-estate PACA trust funds before PACA trust beneficiaries received full payment.  Kingdom Fresh Group objected to this request, claiming the Debtors could not dip into funds they did not own to pay their hired professionals.  Thus, Debtors' Counsel and Kingdom Fresh Group disagreed on the single issue of whether Debtors' Counsel's administrative expense

claim had priority over unpaid trust beneficiaries.  When the Bankruptcy Court signed

all three (3) Fee Orders, it finally decided that lone issue between the parties.  Thus,

all three (3) Fee Orders were final and appealable pursuant to 28 USC § 158(a)(1).

### ii) *Debtors Counsel Failed to Show How the District Court Abused Its Discretion in Granting Kingdom Fresh Group Leave to Appeal*

Fed. R. Bk. P. 8003(c) vests the District Court with discretion to hear

interlocutory appeals, <u>even in the absence of a motion for leave to appeal</u>, and states

as follows:

> If a required motion for leave to appeal is not filed, but a notice of
> appeal is timely filed, the district court or bankruptcy appellate panel
> **may** grant leave to appeal or direct that a motion for leave to appeal be
> filed.

Fed. R. Bk. P. 8003(c)

Thus, even if Fee Orders 1 and 2 were "interlocutory", pursuant to Fed. R. Bk.

P. 8003(c), the District Court still had discretion to take that appeal.  The record

contains no order from  District Court denying leave to appeal.  In fact, the District

Court issued a twenty seven (27) page written opinion vacating, in part, Fee Orders

1 and 2. ROA.14-51080.614-640.   Debtors' Counsel wholly failed to explain why the

District Court abused its discretion in granting leave to hear Kingdom Fresh Group's

appeal.  Thus, the District Court properly had subject matter jurisdiction over all three

(3) Fee Orders.

III.    DEBTORS' COUNSEL FAILED TO MEET HIS "CLEARLY
        ERRONEOUS" STANDARD REGARDING THE DISTRICT
        COURT'S REJECTION OF ITS "IMPLIED CONSENT" AND
        JUDICIAL ESTOPPEL ARGUMENTS

A)    Standard of Review

Whether the District Court properly rejected Debtors' Counsel's arguments of "implied consent" and judicial estoppel are mixed questions of law and fact.   In this case, facts are in dispute because Kingdom Fresh Group believes the record is devoid of any facts in the  record sufficient to support "implied consent" or judicial estoppel. Accordingly,  this Court reviews the District Court's decision under the "clearly erroneous" standard.   American International Trading v. Petroleos Mexicanos, 835 F. 2d 536, 539 (5th Cir. 1987).

B)    Analysis

Debtors' Counsel failed to show how the District Court's rejection of its "implied consent" and judicial estoppel arguments was clearly erroneous.

i)    *Implied Consent*

The District Court properly rejected Debtors' Counsel's "implied consent" argument.  As the District Court correctly pointed out, once again Debtors' Counsel mis-characterized key facts in the record.  Just as Debtors' Counsel mis-characterized the Bankruptcy Court finding of no conflict of interest on the Cross-Claims issue, he

now pretends the Bankruptcy Court did not address Argument #1 at the November 4, 2013 hearing. This mis-characterization is precisely what led the District Court to reject Debtors' Counsel's "implied consent" argument as "unpersuasive, **if not entirely misleading**." ROA 14-51079 p.1413. Debtors' Counsel simply re-hashes these misleading arguments to this Honorable Court without ever explaining how the District Court "got it wrong." In the end, Debtors' Counsel failed to show how the District Court's rejection of its "implied consent" argument was clearly erroneous.

*ii)*     *Judicial Estoppel*

Debtors' Counsel similarly failed to show how the District Court's rejection of its judicial estoppel argument was clearly erroneous. "In this Circuit, 'two bases for judicial estoppel' must be satisfied before a party can be estopped. Id. *quoting* Ahrens v. Perot Systems, 205 F.3d 831, 833 (5th Cir. 2000). In Hall v. GE Plastic Pacific PTE, 327 F.3d 391, 396 (5th Cir. 2003), the 5th Circuit explained these two required showings as follows:

> First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second], that party must have convinced the court to accept that previous position.

Hall, 327 F.3d at 396 *quoting* Ahrens, 205 F.3d at 833 (internal quotations omitted).

"Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial

integrity."    State of New Hampshire v. State of Maine, 532 U.S. at 750-51 (2001)

*quoting* U.S. v. C.I.T. Constr., 944 F.2d 253, 259 (5th Cir. 1991)(internal quotations

omitted).

The District Court properly rejected Debtors' Counsel's judicial estoppel

argument because it found Kingdom Fresh Group presented no prior inconsistent

position to the Bankruptcy Court.  ROA 14-51080 p. 702.  Debtors' Counsel pointed

to no such "inconsistent position" in the record or otherwise provided any sort of

explanation how the District Court "got it wrong".  Debtors' Counsel failed to show

how the District Court's rejection of its judicial estoppel argument was clearly

erroneous.

IV.    DEBTORS' COUNSEL FAILED TO SHOW THE DISTRICT
       COURT'S APPLICATION OF THE ALANCO HOLDING WAS
       CLEARLY ERRONEOUS

A) Standard of Review

Whether the District Court properly applied the holding of C.H. Robinson v.

Alanco, 239 F. 3d 483 (2nd Cir. 2001) to the facts of this case is a mixed question of

law and fact.  This Honorable Court reviews the District Court's ruling under the

clearly erroneous standard.  American International Trading v. Petroleos Mexicanos,

835 F. 2d 536, 539 (5th Cir. 1987).

B)    Analysis

38

*i) Alanco is Directly On Point*

Contrary to the assertions of Debtors' Counsel, the fact pattern here makes Alanco directly on point.  In Alanco, an attorney for the produce debtor tried to claim an attorney's lien on produce receivables to pay his fees. However, there were still unpaid PACA trust beneficiaries so the 2nd Circuit said the fee claims of Debtor's Counsel cannot jump ahead of the rights of the unpaid trust beneficiaries.   C.H. Robinson v. Alanco, 239 F. 3d at 488.

In the present case, Debtors' Counsel admittedly sought and received payment from PACA trust assets before PACA trust beneficiaries received full payment. Debtor's Counsel now claims it did not represent the Debtors but was another kind of animal entirely (a  "Special PACA Counsel") in very transparent attempt to distance himself from the Alanco ruling.  Regardless of what he elects to call himself, the fact remains that Debtors' Counsel is not a PACA trust beneficiary.  The District Court correctly relied on Alanco to reason that "any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations" when it vacated the Bankruptcy Court Orders allowing Debtors' Counsel to be paid from PACA trust assets before PACA trust beneficiaries would be paid in full. ROA.14-51080.639.  The District Court got it 100% right when it vacated the orders that allowed a junior creditor/non-beneficiary to be paid out of

trust funds before PACA trust beneficiaries were paid in full.

        *ii)*     *The PACA Procedures Order*

        Debtors' Counsel claims that the PACA Procedures Order distinguishes the facts of this case from <u>Alanco</u>. <u>See</u> Debtors' Counsel's Brief p. 25. The District Court rejected this argument and went through a five (5) page analysis of why the PACA Procedures Order fails to save the day for Debtors' Counsel. ROA.14-51079.1395-1400. Again, Debtors' Counsel never addressed why the District Court "got it wrong," but simply rehashes the same rejected arguments to this Honorable Court. Debtors' Counsel failed to even attempt to show how the District Court was clearly erroneous.

        Further, the PACA Procedures Order suffers from several serious problems. First, as stated *supra*, the PACA Procedures Motion went out on shortened notice and that motion *<u>failed to even request payment from non-estate trust funds</u>*. Second, it has absolutely no basis in the Bankruptcy Code. 11 U.S.C. § 327 and § 328 govern retention and compensation of professional persons. These sections contain absolutely no framework for the Bankruptcy Court to appoint a "Special PACA Counsel" to work for "the trust itself". Third, the PACA Procedures Order has no basis in the Federal Rules of Bankruptcy Procedure. In fact, Fed. R. Bank. P. 9031 explicitly ***<u>prohibits</u>*** any such roles in bankruptcy cases. "This rule precludes the

appointment of masters in cases and proceedings under the Code". Fed. R. Bank. P. 9031.

Fourth, as the District Court correctly noted, "PACA's statutory text <u>unequivocally requires</u> that PACA trust assets must be used to pay the sellers of PACA goods ahead of all other creditors". ROA.14-51079.1394. Thus, not only does the PACA Procedures Order contain relief Debtors' Counsel never requested or sought in his own PACA Procedures Motion, it directly conflicts with the PACA, the Bankruptcy Code and the Bankruptcy Rules. In his appeal, Debtors' Counsel is literally asking this Honorable Court to ignore all of the above controlling law so he can get paid from some funds his clients did not even own. Debtors' Counsel seems to believe the moniker "Special PACA Counsel" means "above the law."

Debtors' Counsel's refusal to follow the PACA, Bankruptcy Code and Bankruptcy Rules even continues before this Honorable Court. Debtors' § 327(e) Counsel has now hired his own counsel, Mark C.H. Mandell (hereinafter "Mr. Mandell") to represent it before this Honorable Court. Debtors' Counsel never sought leave from the Bankruptcy Court to hire Mr. Mandell, and in doing so, wholly ignored both 11 U.S.C. § 329 and Fed R. Bank. P. 2016. In fact, no notice of any kind was provided to the Bankruptcy Court charged with the duty of overseeing the actions of all hired professions the Debtors employ. Thus, Debtors' Counsel failed

41

to provided the usual required disclosures regarding Mr. Mandell's relationship to the Bankruptcy estate, how his fees are to be paid and the source of any such compensation. Even at this much higher level in the Federal court system, Debtors' Counsel continues to ignore the Bankruptcy Code's rules for the retention and compensation of professions.

V.     DEBTORS COUNSEL FAILED TO SHOW HOW THE DISTRICT COURT'S DECISION TO VACATE ALL THREE (3) FEE AWARDS WAS CLEARLY ERRONEOUS

A)     Standard of Review

Whether the District Court correctly vacated all three (3) orders in their entirely is a mixed question of law and fact. Accordingly, this Court reviews the District Court's decision under the clearly erroneous standard.     American International Trading v. Petroleos Mexicanos, 835 F. 2d 536, 539 (5th Cir. 1987).

B) Analysis

The District Court plainly vacated all three (3) Fee Orders because paying Debtors Counsel before PACA trust beneficiaries receive full payment "would directly violate the language of PACA and its regulations". ROA.14-51080.639. The District Court did not limit its holding to just Kingdom Fresh Group. Debtors' Counsel now tries to claim this Honorable Court should somehow limit the District Court's holding. Again, Debtor's Counsel failed to offer any explanation as to why

the District Court erred.  Similarly, the Debtors' Counsel fails to even address how paying it before produce beneficiaries would <u>not</u> violate PACA, the Bankruptcy Code or the Bankruptcy Rules.  This Honorable Court should affirm the District Court's rulings vacating all three (3) Fee Awards in their entirely because Debtors' Counsel failed to show how the District Court's holding was clearly erroneous in any way.

CONCLUSION

For the reasons stated above, Kingdom Fresh Group respectfully requests this Honorable Court affirm the District Court's rulings vacating all three (3) Fee Orders in their entirety.  Alternatively, Kingdom Fresh Group respectfully requests this Honorable Court to reverse the District Court's failure to even consider whether Debtors' Counsel's conduct created an actual conflict of interest, find Debtors' Counsel's simultaneous representation of both the Debtors and PACA creditors to be an actual conflict of interest and order Debtors' Counsel to disgorge all fees he received to date.

February 9, 2015                            Respectfully Submitted,

                                            KINGDOM FRESH PRODUCE, INC.,
                                            I . K U N I K   C O . ,   I N C . ,   F I V E
                                            BROTHERS JALISCO PRODUCE

43

CO. INC d/b/a BONANZA 2001, RIO
BRAVO PRODUCE LTD. CO., LLC,
& G.R. PRODUCE, INC.

By: /s/ Michael J. Keaton, Esq.
      One of its Attorneys

Michael J. Keaton, Esq.
Scott E. Hillison, Esq.
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015
Tel:   847/934-6500
Email: keaton@pacatrust.com

## <u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)</u>

The undersigned, counsel of record for Appellant/Cross-Appellee Kingdom Fresh Group. furnishes the following in compliance with F.R.A.P. 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P 32(a)(7)(B) and (C) for a reply brief produced with a proportionally spaced 14 pt. font. The length of this reply brief is 9,993 words in 595 lines of text, being *less than* the maximum of 14,000 words in 1,300 lines of text allowed under the F.R.A.P. 32(a)(7)(B)(ii) exception to the basic page limitation found in F.R.A.P. 32(a)(7)(A).


Dated: February 9, 2015                    By: /s/ Michael J. Keaton

                                           Michael J. Keaton, Esq.
                                           KEATON LAW FIRM, P.C.
                                           707 Lake Cook Road, Suite 300
                                           Deerfield, Illinois 60015
                                           Tel:   847/934-6500
                                           Email: keaton@pacatrust.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, counsel for Kingdom Fresh Group certify that I sent copies of this Brief to the parties listed below via the Court's ECF system.

Mark C.H. Mandell, Esq.
42 Herman Thau Road
Annandale, New Jersey 08801

Craig A. Stokes, Esq.
STOKES LAW OFFICE, LLP
3330 Oakwell Court, Suite 334
San Antonio, Texas 78218

Dated: February 9, 2015                    By: <u>Michael J. Keaton, Esq.</u>

Michael J. Keaton
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015
Tel:   847/934-6500
Email:  keaton@pacatrust.com